# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES BROOKS,<br>          Plaintiff,<br>v.<br><br>CORRECTION OFFICER AUSTIN and<br>CORRECTION OFFICER WEAVER.<br>          Defendants. | CIVIL NO. 09-5773 |

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                                                                                                                                **June 30, 2010**

This case arises out of alleged events at Chester County Prison in which Plaintiff James Brooks claims his rights were violated by Defendant Correction Officers ("C.O.") Austin and Weaver. Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the reasons that follow, Defendants' Motion is granted in part, denied in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff describes two incidents that allegedly took place while he was detained pretrial at Chester County Prison: the first occurred on Q Block on November 7, 2009 at 7:10 p.m., and the second occurred on T Block on November 26, 2009 at 9:30 p.m. Plaintiff asserts that on November 7, 2009, there was a dispute involving C.O. Weaver and a group of inmates, including

---

[1] Doc. No. 7.

1

Plaintiff, regarding the use of the inmate television.[2]  When "the Block" became angry, C.O. Weaver asked Plaintiff and other inmates to "lock up".  Plaintiff claims that at that point he asked for a supervisor, which request was denied by C.O. Weaver.[3]

Plaintiff next asserts that, as a result of the events on Q Block, he was handcuffed and told to face the wall on J Block.[4]  He refused, after which C.O. Austin "slammed [Plaintiff] against the wall head first and put his elbow in [Plaintiff's] neck pushing [his] face against the wall."[5]  Plaintiff adds that another unidentified officer was "on my neck too."[6]  Other corrections officers were present, as well as supervisor Sergeant Hamilton.[7]  Plaintiff claims that his cellmate, Thessalonius Smith, witnessed the incident in its entirety.[8]

As a result of the encounter with C.O. Austin, Plaintiff states that he sustained knee and shoulder injuries.[9]  He further claims that "[the prison medical staff] refused medical help and when I put a sick call in they (the medical staff) did give me some medication for the pain and put me on the list for a [sic] xray."[10]  When Plaintiff told Lieutenant Forbs about the encounter with C.O.

---

[2] Doc. No. 1 at 3.

[3] Id.

[4] Id.

[5] Id.

[6] Id.

[7] Id.

[8] Id.

[9] Id.

[10] Id.

2

Weaver, he received forty-five (45) days in the Restrictive Housing Unit ("RHU").[11] Plaintiff also asserts that he gave Lieutenant Forbs a grievance request form, but heard nothing further.[12] Plaintiff names Sergeant Pettiford as another officer who ignored his claims.[13]

It is unclear whether the second incident referenced in the Complaint was the encounter with C.O. Austin or another event that allegedly occurred during cell searches on November 26, 2009. Plaintiff avers that Sergeant Pettiford "put clothes and a towel of [Plaintiff's] in the toilet."[14]

On December 9, 2009, Plaintiff brought the instant *pro se* action, requesting that the Court grant him monetary relief for "racial profiling" ("the quads with white people on it have no problems"), "negligence", and "unnecessary force" and his resulting injuries.[15] Defendants thereafter filed the instant Motion to Dismiss. As Plaintiff himself does not refer to any law upon which his claims might arise,[16] Defendants' Motion assumes that the Complaint contains 42 U.S.C. § 1983 claims arising out of alleged violations of Plaintiff's Fourteenth Amendment substantive due process rights and Eighth Amendment protections.[17]

---

[11] Id. at 5.

[12] Id.

[13] Id.

[14] Id.

[15] Id. at 5-6.

[16] Plaintiff failed to respond to the instant Motion to Dismiss.

[17] The Complaint caption reads "COMPLAINT under the Civil Rights Act, 42 U.S.C. § 1983 (Prisoner Complaint)". Id. at 1.

3

## II. STANDARD OF REVIEW

A complaint can be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has not presented "'enough facts to raise a reasonable expectation that discovery will reveal evidence' of [a] necessary element."[18] A court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[19] In particular when determining the sufficiency of a *pro se* complaint, a court must construe it liberally in the plaintiff's favor.[20] However, a plaintiff's "bald assertions" or "legal conclusions" need not be accepted as true by the court.[21] At this stage, the court does not determine whether the non-moving party will prevail, but whether it will be permitted to offer evidence in support of the claims in the complaint.[22]

The pleading standard, described in Federal Rule of Civil Procedure 8(a)(2) as "a short and plain statement of the claim showing that the pleader is entitled to relief"[23] has been addressed twice by the Supreme Court of the United States in recent years, first in Bell Atlantic v.

---

[18] Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

[19] Id. at 233.

[20] See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (citations omitted).

[21] In Re Burlington Coat Factory Sec. Litigation, 114 F.3d 1410, 1429-30 (3d Cir. 1997).

[22] Fay v. Muhlenberg College, 2008 U.S. Dist. LEXIS 5063, at *4 (E.D. Pa. Jan. 23, 2008) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

[23] FED. R. CIV. P. 8(a)(2).

Twombly[24] and then in Ashcroft v. Iqbal.[25] The Twombly Court articulated a "plausibility" standard that a plaintiff must meet by its factual allegations to survive a motion to dismiss. The Court described it as a level higher than suspicion or speculation.[26] The Iqbal Court, applying the Twombly standard in a discrimination case, offered further explanation and support, stating "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'"[27] Even after the decisions in Twombly and Iqbal, however, a court must construe a *pro se* complaint liberally in the plaintiff's favor.[28]

### III. DISCUSSION

In order to establish a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or the laws of the United States, and must show that the deprivation was committed by a person acting under color of state law.[29] A defendant can be liable for a civil rights violation under § 1983 only if he or she "subjects, or causes to be subjected," the plaintiff to the deprivation of rights alleged.[30] "A fundamental requirement of a cause of action under 42 U.S.C.

---

[24] 550 U.S. 544 (2007).

[25] 129 S. Ct. 1937 (2009).

[26] The decision in Twombly retired the previous standard articulated in Conley v. Gibson, 355 U.S. 41 (1957), allowing dismissal if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Gibson, 355 U.S. at 45-46.

[27] Iqbal, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

[28] See Erickson, 551 U.S. 89.

[29] See, e.g., West v. Atkins, 487 U.S. 42, 47-49 (1988).

[30] 42 U.S.C. § 1983.

§ 1983 is that injuries be personally caused by the defendant."[31]

Plaintiff appears to be articulating a § 1983 claim for alleged violations of his Fourteenth Amendment rights. The due process guarantees of the Fourteenth Amendment apply to pretrial detainees.[32] Therefore, "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."[33] To determine what behavior or condition amounts to punishment, this Court looks to the United States Supreme Court in Bell v. Wolfish:

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.[34]

When a plaintiff alleges that excessive force was used by an officer, a court must examine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[35] Courts should take into account an officer's responsibility to maintain

---

[31] Stratton v. Mash, 71 F. Supp. 2d 475, 476 (E.D. Pa. 1999) (citing City of Canton v. Harris, 489 U.S. 378, 389 (1989)).

[32] See Fuentes v. Wagner, 206 F.3d 335, 341-42 (3d Cir. 2000). Here, Plaintiff does not specify in his Complaint whether he was being detained pretrial or post-trial. Defendants aver, however, that Plaintiff was a pretrial detainee at the time of the relevant events. See Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 4.

[33] Bell v. Wolfish, 441 U.S. 520, 535 (1979).

[34] Id. at 538-39 (citations omitted).

[35] Hudson v. McMillian, 503 U.S. 1, 6 (1992) (citing Whitley v. Albers, 475 U.S. 312 (1986)).

6

discipline while minimizing harm to inmates and other officers.[36] "In determining whether force was applied in good faith, courts should consider: (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any effort made to temper the severity of response."[37]

In the instant matter, Plaintiff alleges a violent encounter with C.O. Austin in which he was "slammed" into a wall, and then "pushed" into it, resulting in significant knee and shoulder injuries. Plaintiff claims that another officer was also "on [his] neck". He asserts that the only reason for C.O. Austin's behavior was a prior incident involving an argument over the use of the inmate television. All of these events were said to have occurred while Plaintiff was handcuffed, and there is no allegation that Plaintiff or any other inmates were acting in a threatening or violent manner at the time. Without facts that show a need for force, a legitimate governmental objective, or a "good faith effort to maintain or restore discipline", Plaintiff's claim for excessive force must survive.[38]

Additionally, Plaintiff alleges that he was denied medical treatment; for pretrial detainees, denial of medical care claims are also considered under the due process clause of the Fourteenth Amendment.[39] The Third Circuit has held, however, that the Eighth Amendment

---

[36] Id. at 6 (internal quotation marks omitted).

[37] See id. at 8.

[38] In their Motion to Dismiss, Defendants also discuss a potential Eighth Amendment claim for cruel and unusual punishment raised in Plaintiff's Complaint. The Eighth Amendment does not apply to pretrial detainees. See Whitley v. Albers, 475 U.S. 312, 318 (1986). Regardless, the standard for an excessive force claim under the Fourteenth Amendment and a cruel and unusual punishment claim under the Eighth Amendment are identical. See Fuentes, 206 F.3d at 347.

[39] See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 243-45 (1983).

7

standard for cruel and unusual punishment acts as a floor for due process inquiries into medical and non-medical conditions of pretrial detainees.[40] In order for a plaintiff to set forth a cognizable claim for a violation of his right to adequate medical care, he or she must show: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.[41] Plaintiff does not plead enough facts here to demonstrate deliberate indifference to his medical needs. He admits that the medical staff gave him medication for the pain of which he complained, and that he was placed on a list to receive an x-ray. Also, even if Plaintiff could establish deliberate indifference, Plaintiff does not identify any parties in his Complaint who were allegedly involved in his medical treatment, nor does he argue that C.O. Austin or Weaver were involved in any medical decision relating to his treatment.

Finally, Plaintiff refers to "racial profiling" in his Complaint, yet fails to plead adequate facts to support an allegation that C.O. Austin or C.O. Weaver were involved in such activity. Consequently, the Court concludes that Plaintiff has failed to assert a cognizable equal protection claim.

The Court does find, however, that Plaintiff has plead sufficient facts to meet the plausibility standard with respect to a § 1983 claim against C.O. Austin for excessive force under the Fourteenth Amendment. We further find that Plaintiff has not plead sufficient facts to show that C.O. Weaver deprived him of any constitutional rights. Thus, all claims against C.O. Weaver shall be dismissed. In addition, the Court finds it appropriate at this time to allow the case to be referred

---

[40] Hubbard v. Taylor, 399 F.3d 150, 165-67 (3d Cir. 2005).

[41] Estelle v. Gamble, 429 U.S. 97, 106 (1976); Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

to the Prisoner's Civil Rights Panel so that Plaintiff may have an opportunity to obtain counsel.

An appropriate Order follows.